NANC E. FELLERMAN, PLAINTIFF-RESPONDENT, v. FRANCIS J. BRADLEY, JR., DEFENDANT-APPELLANT.

Submitted October 10, 1984—Decided June 27, 1985.

494 

————

*Nancy C. Ferro* submitted a brief on behalf of appellant (*Ferro & Ferro,* attorneys).

*Paula L. Crane* submitted a letter in lieu of brief on behalf of respondent (*Elwell and Crane,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In this case, an attorney representing a litigant in a contested matrimonial matter refused to disclose to a trial court the address of his client. As a result, the attorney effectively prevented the court from enforcing a provision of the final judgment that required the client to pay an expert's fee. The legal issue presented concerns the extent to which a client's address is protected against compelled disclosure under the statutory attorney-client privilege, as well as the court disciplinary rule governing confidential and secret communications between attorneys and clients.

## I.

In the course of divorce proceedings, the trial court appointed an accountant to examine the financial affairs of the defendant-husband, as well as those of the plaintiff-wife. 191 *N.J.Super.* 73 (Ch.Div.1983). The initial costs of these professional services were to be borne by defendant with the total costs to be allocated after the final hearing. *Id.* at 75. While still performing these services the accountant contacted Edward S. Zizmor, defendant's former attorney, to arrange for the payment of his fee. He was advised that defendant had moved out of New Jersey and that his whereabouts were unknown. Nevertheless, the accountant continued to perform the financial examinations as directed by the court. He submitted his final

bill for $375.00 to Ralph Ferro, Esq., who had been substituted as counsel for defendant. *Id.* at 76.

On the date set for trial the divorce litigation was concluded by an agreement between the parties. The agreement was later incorporated into the final judgment, explicitly obligating the defendant to pay the accountant's fee. Thereafter the trial court wrote to Mr. Ferro requesting payment of the accountant's fee. Mr. Ferro replied that defendant no longer resided in New Jersey and that "[a]lthough I have his address, this address was given to me in confidence by a client and I cannot disclose that address unless so ordered by the New Jersey Supreme Court." He additionally stated that he was "not attempting to be uncooperative, but [that he] must preserve the confidentiality of the lawyer-client relationship." *Id.* at 76.

The court then ordered Mr. Ferro to show cause as to why he should not be held in contempt for his refusal to disclose defendant's address. On the return date, Mr. Ferro again raised the attorney-client privilege as a defense. The court determined that recognition of the privilege in these circumstances "would not serve any of its purposes and would do violence to the principles and ideals it is intended to further," *id.* at 83, and that the refusal to disclose defendant's address would frustrate the judgment of the court. *Id.* at 83–84. Accordingly, the court ordered disclosure of the address. *Id.* at 84.

The Appellate Division affirmed the trial court's order. 192 *N.J.Super.* 556 (1983). It acknowledged that the privilege should be strictly construed to achieve its underlying purpose of facilitating the full exchange of information between an attorney and client. 192 *N.J.Super.* at 558–59. It found that the facts fell within the "crime or fraud" exception to the privilege. *Id.* at 559. The court also rejected defendant's argument that his address was a "confidence or secret" protected from disclosure by the applicable disciplinary rule. We granted certification, 96 *N.J.* 280 (1984), and now affirm the

judgment below substantially for the reasons advanced by the lower courts.

## II.

The attorney-client privilege is codified at *N.J.S.A.* 2A:84A-20 and in *Evidence Rule* 26. The enacted privilege provides that

communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it.... The privilege shall be claimed by the lawyer unless otherwise instructed by the client or his representative; the privilege may be claimed by the client in person.... [*N.J.S.A.* 2A:84A-20; *Evid.R.* 26.]

A client entitled to the privilege is defined as a person who "consults a lawyer ... for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." *N.J.S.A.* 2A:84A-20(3); *Evid.R.* 26(3).

Although now codified by statute, the attorney-client privilege is recognized as one of "the oldest of the privileges for confidential communications." 8 *J. Wigmore, Evidence* § 2290, at 542 (McNaughton rev. 1961); *see* G. Hazard, "An Historical Perspective on the Attorney-Client Privilege," 66 *Calif.L.Rev.* 1061, 1071 (1978); Note, "The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement," 91 *Harv.L. Rev.* 464, 465 (1977). Over time, the primary justification and dominant rationale for the privilege has come to be the encouragement of free and full disclosure of information from the client to the attorney. *See C. McCormick, Evidence* § 87, at 175-76 (2d ed. 1972); *Wigmore, supra,* § 2290, at 543; Note, "The Attorney-Client Privilege in Class Actions: Fashioning an Exception to Promote Adequacy of Representation," 97 *Harv.L. Rev.* 947, 948 (1984). This has led to the recognition that the privilege belongs to the client, rather than the attorney. J.M. Callen & H. David, "Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System," 29 *Rutgers L.Rev.* 332, 337 (1976); Annot., "Disclosure of Name, Identity, Address, Occupation or Busi-

ness of Client as Violation of Attorney-Client Privilege," 16 *A.L.R.*3d 1047, 1050 (1967).

It has been suggested in the course of these proceedings that the challenged communication—the address of the client—is not the kind of attorney-client communication that is covered by the privilege. The Appellate Division observed that the record was uninformative as to the circumstances surrounding the controverted communication and declined to rule whether the communication was itself encompassed by the privilege. 192 *N.J.Super.* at 558.

■ In general, the statutory and common-law standard for determining what constitutes a privileged communication is quite broad in terms of encompassing attorney-client conversations. For a communication to be privileged it must initially be expressed by an individual in his capacity as a client in conjunction with seeking or receiving legal advice from the attorney in his capacity as such, with the expectation that its content remain confidential. *N.J.S.A.* 2A:84A–20(1) and (3); *In re Kozlov*, 156 *N.J.Super.* 316, 321 (App.Div.1978), rev'd on other grounds, 79 *N.J.* 232 (1979). *See generally* 8 *Wigmore, supra,* § 2292 at 554 (discussing when communication is privileged).

One basis for the assertion that an address is not protected by the privilege is that in this case defendant's address was not given to his attorney for the specific purpose of obtaining legal advice. However, as noted by the Appellate Division, this argument is not factually supported. It is simply not possible to conclude whether the communication of the client's address was related to the legal advice that defendant sought to obtain and the lawyer rendered. We are thus unable to assess the contention that in this case the communication of defendant's address was so unrelated to seeking and receiving adequate legal advice that it cannot be cloaked with the attorney-client privilege.

It is further suggested that an address is never protected because the place where a client lives is an objectively demon-

strable fact, susceptible of verification apart from its being the subject of a communication. For this reason, it is asserted that the "fact" of defendant's address can be considered apart from its "communication" and is therefore not protected by the attorney-client privilege.

There is, however, no clear decisional consensus about whether a personal address communicated by a client to an attorney in the course of the attorney-client relationship comes within the privilege. Cases that have required disclosure of a client's address generally have not assumed that an address as such cannot be a confidential communication. The focus of these decisions dealing with a client's address is not on the jurisdictional scope of the attorney-client privilege but on its overriding purpose. Thus, some cases require the disclosure of a client's address during the pendency of litigation when necessary to promote the efficient progress of the court or to avoid frustrating the judicial process. *See Sunga v. Lee*, 13 *Ill.App.*2d 76, 141 *N.E.*2d 63 (1957) (privilege is pierced when, after diligent efforts, plaintiff needs address to serve absentee defendant); *In re Illidge*, 162 *Or.* 393, 91 *P.*2d 1100 (1939) (attorney required to disclose address of client in deposition in which plaintiff was trying to determine how jurisdiction could be obtained); *Taylor v. Taylor*, 45 *Ill.App.*3d 352, 3 *Ill.Dec.* 961, 359 *N.E.*2d 820 (1977) (recognizing that to insure smooth operation of legal machinery during a pending action in which a client's address is sought, attorney is obliged to disclose client's place of residence). Other cases have recognized that even after final adjudication, an address may be required to be revealed if necessary to prevent flouting a court's order. *Mercado v. Parent*, 421 *So.*2d 740 (Fla.App.1982); *see Jafarian-Kerman v. Jafarian-Kerman*, 424 *S.W.*2d 333 (Mo.App.1967) (address of client who removed child from jurisdiction in violation of limited custody order was not privileged); *Falkenhainer v. Falkenhainer*, 198 *Misc.* 29, 97 *N.Y.S.*2d 467 (Sup.Ct.1950) (court required disclosure of address of client, who was not awarded custody but removed child from jurisdiction, stating

that to uphold privilege would "aid and abet this defendant in frustrating the judgment of the court"); *Richards v. Richards,* 64 *Misc.* 285, 119 *N.Y.S.* 81 (Sup.Ct.1909), *aff'd,* 127 *N.Y.S.* 1141 (A.D. 1st Dept.1911) (in spite of attorney's promise to keep client's address confidential, court required disclosure; it would not aid defendant in his defiance of order directing him to pay alimony and counsel fees).

■ The cases do not recognize a *per se* exemption of a client's address from the class of communications that are protected by the privilege.[1] The theme underlying these decisions is that the privilege itself does not furnish an absolute or immutable bar against the disclosure of a client's address. Rather, their centralizing rationale is that in this context the privilege is to be applied in a manner that will be consistent with necessities of judicial policy and with the essential purpose the privilege is designed to serve.

■ We perceive no sound reason why the communication that consists of, or includes, a client's address should not, at least in a case such as this, be governed by the same considerations that obtain as to other communications that are accorded the privilege. We therefore decide the issues involved not on

---

[1]Similarly, cases in this state and others indicate that the identity of a client is not automatically outside the protection of the privilege. In *State v. Toscano,* 13 *N.J.* 418, 424 (1953), the court stated that "[m]ost of the authorities hold that while the privilege protects against the disclosure of confidential communications from the client to his attorney, it is not intended to permit concealment by the attorney of the identity of his client." However, in certain circumstances the privilege may protect a client's identity from compelled disclosure. In *In re Kozlov,* 79 *N.J.* 232 (1979), the Court permitted an attorney to refuse to disclose his client's identity when less intrusive sources of the same information were available. *See also In re Kaplan,* 8 *N.Y.*2d 214, 203 *N.Y.S.*2d 836, 168 *N.E.*2d 660 (1960) (client's identity may be privileged if directly related to advice proffered by attorney); 81 Am.Jur.2d *Witnesses* § 231 (1976) at 246 ("[A] client's name may be privileged if information already obtained by the tribunal, combined with the client's identity, might expose him to criminal prosecution for acts subsequent to, and because of which, he had sought the advice of his attorney.").

the basis of whether an address is, or may ever be, the subject of a protected confidential communication between a client and attorney but on the basis of the purposes for which the privilege exists and the reasons for its assertion in the context of the particular case.

The attorney-client privilege is indispensable in fostering a climate that is propitious for effective legal advice and representation. It "is not an idle and anachronistic vestige of the ancient past." *In re Kozlov,* 79 *N.J.* 232, 242 (1979). Its protections are the result of the judicial recognition that the public is well served by sound legal counsel based on full and candid communication between attorneys and their clients. "Preserving the sanctity of confidentiality of a client's disclosures to his attorney will encourage an open atmosphere of trust · * * *." *Reardon v. Marlayne,* 83 *N.J.* 460, 470 (1980).

Our decisional treatment of the privilege, however, recognizes that it is not absolute. *E.g., In re Kozlov, supra,* 79 *N.J.* 232; *In re Richardson,* 31 *N.J.* 391 (1960); *In re Selser,* 15 *N.J.* 393 (1954); *State v. Toscano,* 13 *N.J.* 418 (1953); *In the Matter of Stein,* 1 *N.J.* 228, 236 (1949); *see United Jersey Bank v. Wolosoff,* 196 *N.J.Super.* 553 (App.Div.1984); *Ervesun v. Bank of New York,* 99 *N.J.Super.* 162 (App.Div.), certif. den., 51 *N.J.* 394 (1968). Like all evidentiary privileges, the attorney-client privilege, though serving a significant public policy, if invoked in the context of litigation, can conflict with other important policies of our judicial system. One such policy consideration is that which encourages the fullest disclosure of facts as the most efficacious approach "to the truth and ultimately to the triumph of justice." *In re Selser, supra,* 15 *N.J.* at 405. Therefore, considerations of public policy and concern for proper judicial administration have led the legislature and the courts to fashion limited exceptions to the privilege. These exceptions attempt to limit the privilege to the purposes for which it exists. *In re Richardson, supra,* 31 *N.J.* at 397; *In re Selser, supra,* 15 *N.J.* at 405–06.

■ The "crime or fraud" exception to the privilege represents a statutory recognition of a situation in which the purpose of the privilege would not be served by its enforcement. The exception encompasses a type of communication that is alien to the fundamental reasons that underlie the privilege. This exception provides that the "privilege shall not extend to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud." *N.J.S.A.* 2A:84A–20(2)(a); *Evid.R.* 26(2)(a). We emphasized this in *In re Stein, supra:*

> To bring a matter within the role of "privilege" there must be both professional employment and professional confidence. A lawyer cannot be properly consulted professionally for advice to aid in the perpetration of a fraud on a court. The claim of "privilege" is that of the client and a fraudulent object or purpose puts him beyond the pale of the Law's protection. [1 *N.J.* at 236.]

Thus, when a client seeks the aid of an attorney for the purpose of committing a fraud, a communication in furtherance of that design is not privileged.

■ In this context our courts have generally given the term "fraud" an expansive reading. *In Re Callan,* 122 *N.J.Super.* 479, 496 (Ch.Div.), aff'd, 126 *N.J.Super.* 103 (App.Div.1973), rev'd on other grounds, 66 *N.J.* 401 (1975), stated:

> Confederating with clients to allow court and counsel to labor under a misapprehension as to the true state of affairs; countenancing by silence the violation of a court order and aiding and abetting the continued contempt of another, are all frauds within the meaning of *Evidence Rule* 26(2)(a). There is no reason to believe that the use of the word "fraud" in that rule is to be limited to conventional notions of tortious frauds. Acts constituting fraud are as broad and as varied as the human mind can invent. Deception and deceit in any form universally connote fraud. Public policy demands that the "fraud" exception to the attorney-client privilege as used in *Evidence Rule* 26 be given the broadest interpretation.

Professor Hazard has also suggested a very broad interpretation to the term "tort" in the "crime or tort" exception of Rule 26 of the Federal Rules of Evidence. He postulated that it was plausible to class "any use of legal process for a purpose other than a 'legitimate' one" tortious. Hazard, *supra,* 66 *Calif.L. Rev.* at 1064. We agree with the Appellate Division in this case (192 *N.J.Super.* at 559) that a reading of the fraud exception

that expands the notion of fraud beyond the traditional tort or criminal law definition is fully warranted. The policy behind the protection of the relationship between client and attorney serves to limit the attorney-client privilege to situations in which lawful legal advice is the object of the relationship.

This "fraud" exception also reflects a recognition that the privilege may give way when confronted with concerns relating to the proper and effective administration of justice. Because the privilege is most often invoked in the course of court proceedings, the term "fraud" can acquire special definitional coloration against this background. · In other contexts we have consistently protected the judicial system from the misleading or deceptive conduct of an attorney involved in court proceedings. In *In re Herbstman*, 84 *N.J.* 485 (1980), for instance, an attorney held funds in trust for two clients with conflicting interests. When one client levied against the fund, the attorney failed to inform the court of the other client's claim to the money, causing the court to order the fund turned-over to the first client only. The attorney was disciplined for, among other things, conduct designed to mislead the court. In *In re Stein, supra*, 1 *N.J.* at 236, we specifically ruled that attorney-client communications that constitute "a fraud on a court" are not privileged. Misleading, inconsistent, or deceitful actions directed at the court itself denote a species of deceptive conduct that may fall short of civil or criminal fraud. If that form of deceit, however, directly interferes with the judicial process, it can constitute a fraud on the court.

The concept of "fraud on the court" has most often been applied as a ground for vacating a judgment. *See Hyland v. Kirkman*, 157 *N.J.Super.* 565, 583–84 (Ch.Div.1978); *R.* 4:50–3. Thus, in *In re Kortvellessy*, 102 *N.J.Super.* 226, 233 (App.Div. 1968), a probate judgment was set aside on the ground that "a perjurious affidavit, purposely false and willfully given to the surrogate in order to secure probate of a will, alleging that decedent died while domiciled in New Jersey when in fact she was not, is a fraud upon the Surrogate's Court." *Accord*

*Shammas v. Shammas*, 9 *N.J.* 321, 328, 330 (1952). However, other instances of disrespect for the legal process may constitute "fraud on the court." For example, in *Penwag Property Co., Inc. v. Landau*, 148 *N.J.Super.* 493 (App.Div.1977), aff'd, 76 *N.J.* 595 (1978), landlords had attempted to evict their tenants by creating a sham mortgage and threatening foreclosure. The court affirmed the trial court's entry of judgment on the tenant's malicious abuse of process counterclaim. Judge Kole, concurring, said that the "pattern of overreaching by the landlord" constitutes "an oppressive use of the court as an implement of * * * fraud on the court." 148 *N.J.Super.* at 504–05.

In *State v. Soney*, 177 *N.J.Super.* 47 (App.Div.1980), certif. den., 87 *N.J.* 313 (1981), the court rejected an application of the physician-patient privilege that would have perpetrated a "fraud on the court." A defendant charged with willful and wanton death by automobile attempted to assert the privilege in order to prevent an emergency room physician from testifying. The doctor was permitted to testify as to defendant's statement that prior to the collision, he had failed to take his anti-seizure medication. The appellate court affirmed defendant's conviction and said:

> We point out that since defendant himself produced medical testimony by which he intended to convince the jury that he could properly drive when he took his medicine, the exclusion of Dr. Saguil's testimony would have permitted defendant to mock justice by picking and choosing between physician witnesses. He would have demonstrated his theoretical capacity to operate the vehicle but concealed his failure to take the steps required to drive safely in fact. A decision excluding Dr. Saguil's testimony would have countenanced a fraud on the court. [*Id.*, 177 *N.J.Super.* at 58 (citation omitted).]

In this case, both the Chancery and Appellate Divisions focused on the observation that the failure to disclose the information would frustrate enforcement of the judgment of the court. In this respect, the client, through his attorney, attempted to perpetrate a fraud on the court—to "mock justice" —by consenting to and subsequently flouting a judgment that obligated him to bear the costs of an accountant. This is

particularly significant in view of the fact that the accountant was engaged by the court to act as its expert in determining marital property values. "The expert was to function as an arm of the court, accountable not to counsel, but directly to the court." 191 *N.J.Super.* at 78.

Although we hold that in this case, the client's address is not protected under the attorney-client privilege, it is important to distinguish other situations in which an address may be communicated to an attorney with a legitimate expectation that it remain confidential. In *In re Jacqueline F.*, 47 *N.Y.*2d 215, 417 *N.Y.S.*2d 884, 391 *N.E.*2d 967 (1979), the court refused to protect the address of a client where the client had removed herself and a child from the jurisdiction, in violation of a court custody order. The court noted that "occasions in domestic relations matters certainly exist in which a client may legitimately fear reprisals by his or her spouse and, therefore, request of an attorney that an address remain confidential." *Id.* at 222, 417 *N.Y.S.*2d at 888, 391 *N.E.*2d at 972. In that situation, such communication may be privileged. In this case, as in *In re Jacqueline F., supra,* there is no indication that the client had a legitimate expectation of confidentiality. And as in *Jacqueline F.*, the "client would appear to have kept secret [his] address for one purpose only: to thwart the mandate of the court's judgment * * *." *Id.*

The inference of the requisite duplicitous intent in this case is compelling. It is clear that the defendant requested that his address be kept confidential; his attorney has consistently endeavored to effectuate those wishes. The direct result of their combined position is that the client has escaped enforcement of the court's judgment, which, as noted, incorporated an agreement reached with his consent. Based on this record, it is a virtually inescapable conclusion that at least one of the motives for defendant's request that his address be held confidential was to avoid compliance with the court's order. We are

satisfied that the fraud exception encompasses the facts of this case.[2]

Further, the enforcement of the privilege would result in a direct and clear impairment of the administration of justice. The nondisclosure of the client's address would totally frustrate the orderly processes of the judicial system. *See In re Callan,* 66 *N.J.* 401, 409 (1975) (Mountain, J., concurring) (privilege gives way when "client, with his attorney's knowledge, perpetrates a blatant fraud upon the court."). As voiced by Justice Cardozo, "[t]here is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused." *Clark v. United States,* 289 *U.S.* 1, 15, 53 *S.Ct.* 465, 469, 77 *L.Ed.* 993, 1000 (1933); *see* J.M. Callen & H. David, *supra,* 29 *Rutgers L.Rev.* at 349. In this case, the purpose of the client in keeping his address secret was to thwart an order of the court. Abuse of the privilege in this context is patent, and it overcomes any vestigial reasons for protecting attorney-client communications.

### III.

An additional argument is made that even though the "fraud" exception to the attorney-client privilege might be applicable, Disciplinary Rule 4–101 prevents the disclosure of the client's address.[3] Disciplinary Rule 4–101(B) requires that

---

[2]We note that the client may fulfill his wish to remain undiscovered simply by paying the accountant's fee.

[3]Disciplinary Rule 4–101 states:
 (B) Except as permitted by DR 4–101(C), a lawyer shall not knowingly:
 (1) Reveal a confidence or secret of his client.
 (2) Use a confidence or secret of his client to the disadvantage of the client.
 (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
 (C) A lawyer may reveal:
 (1) Confidences or secrets with the consent of the .client or clients affected, but only after a full disclosure of them.

an attorney not reveal "a confidence or secret of [his] client." The Disciplinary Rule defines a "confidence" as "information protected by the attorney-client privilege under applicable law." DR 4–101(A). However, if the fraud exception to the attorney-client privilege applies to the particular communication, then

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4–101(C) through an employee.

Disciplinary Rule 4–101 was in effect during the pendency of this litigation. It has now been superseded by the Rules of Professional Conduct. RPC 1.6 provides:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

(b) A lawyer shall reveal such information to the proper authorities, as soon as, and to the extent the lawyer reasonably believes necessary, to prevent the client

(1) from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or substantial injury to the financial interest or property of another;

(2) from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to perpetrate a fraud upon a tribunal.

(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary.

(1) to rectify the consequences of a client's criminal, illegal or fraudulent act in the furtherance of which the lawyer's services had been used;

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer based upon the conduct in which the client was involved; or

(3) to comply with the law.

(d) Reasonable belief for purposes of RPC 1.6 is the belief or conclusion of a reasonable lawyer that is based upon information that has some foundation in fact and constitutes prima facie evidence of the matters referred to in subsection (b) or (c).

the communication could not be considered to be a "confidence" protected from disclosure under the privilege. In this case, we have held that the fraud exception applies to defendant's address. Consequently, it is a communication that cannot be protected as a "confidence" under Disciplinary Rule 4–101.

■ Disciplinary Rule 4–101(B) also protects from disclosure a client's secret. It defines a "secret" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(A). It appears then that under the Disciplinary Rule there is some distinction between a "confidence" and a "secret." In this case the subject communication—the defendant's address—was a "secret." The question becomes whether it is disclosable under Disciplinary Rule 4–101(C)(2).

Disciplinary Rule 4–101(C)(2) permits the disclosure of such secrets "when ... required by law or court order." The conclusion that the attorney must comply with the trial court's order compelling disclosure in this case is entirely appropriate. See *Kozlov, supra,* 79 *N.J.* at 243–44; *In re Stein, supra,* 1 *N.J.* 228. The withholding of this information would frustrate compliance with a court judgment that incorporated a consent agreement reached with the participation of the party now seeking to withhold the information. In fact, application of the Disciplinary Rule to continue the confidentiality of this information would prevent compliance with one of the terms of the agreement actually reached by consent. This result would permit a party "to mock justice" by ignoring both a judgment and a separate enforcement order of the Superior Court, with none of the policies underlying the rationale for protecting a client's secrets advanced in the process. These circumstances clearly permit the revelation of defendant's address under Disciplinary Rule 4–101(C)(2).

## IV.

For the reasons set forth in this opinion, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.