859 A.2d 738

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. MICHAEL RAY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 20, 2004—Decided November 3, 2004.

Before Judges KING, AXELRAD and HOLSTON, JR.

*Jacobs & Barbone,* attorneys for appellant (*Louis M. Barbone,* on the brief).

*Peter C. Harvey,* Attorney General, attorney for respondent (*Frank Muroski,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

Defendant Michael Ray appeals from the denial of his motion to quash the grand jury subpoena served upon his counsel, Louis Barbone. The subpoena compels Barbone's testimony before a grand jury regarding communications between him and his client relative to bogus requests for the postponements of defendant's court appearances and sentencing on theft by deception charges. The State intends to seek indictments for bail jumping, criminal contempt, forgery, and filing false statements. The judge concluded that the three-part test established by *In re Kozlov,* 79 *N.J.* 232, 243–44, 398 *A.*2d 882 (1979), to pierce the attorney-client privilege, does not apply where there is a *prima facie* showing of the crime or fraud exception, *N.J.S.A.* 2A:84A–20(2)(a), and, alternatively, that even if the *Kozlov* test were applicable, the State could not secure the "same evidence" from any less intrusive source. We affirm substantially for the reasons set forth by Judge Garofolo in his cogent letter opinion of November 17, 2003.

Defendant was indicted for third-degree theft by deception, *N.J.S.A.* 2C:20–4, for depositing a $6,500.00 check he knew to be fraudulent at the Resorts Casino in Atlantic City. In August 2001, defendant retained Barbone to represent him on the charge. Defendant appeared with counsel for arraignment on September

18, 2001 and was ordered to reappear on October 16, 2001 for a status conference.

Defense counsel received and forwarded to the court, a "Doctor's Excuse/Notice" from the "Horry Neurological Group, P.A." in Myrtle Beach, South Carolina signed by "R.J. Mallek, M.D." stating that defendant could not travel until November 7, 2001 due to injuries he sustained in a car accident. Barbone also forwarded a South Carolina Department of Public Safety Accident Report dated October 5. The court rescheduled defendant's status conference to November 13.

On November 9, defense counsel received and forwarded to the court another doctor's excuse from Dr. Mallek stating defendant could not travel until November 23. On December 10, counsel faxed another excuse/notice from Dr. Mallek stating that as defendant could not travel in a car with his leg bent for extended amounts of time, he would be unable to drive from South Carolina, there were no airline seats available and, thus, defendant would not be present for his scheduled court appearance on December 11. Furthermore, the earliest he would be able to drive would be January 15, 2002. The court adjourned the matter to January 22, 2002.

Defendant appeared on January 22, 2002 and pled guilty to fourth-degree theft by deception in exchange for a recommended sentence of 365–days imprisonment, a $500.000 fine, and restitution of $6,500.00. Sentencing was scheduled for February 22.

Around February 12, defense counsel received and forwarded to the court an unsigned "Doctors Chart Note" from Dr. Mallek, stating that defendant had undergone surgery, required additional surgery due to complications, and would be unable to appear in court. Sentencing was rescheduled for April 19. Defense counsel thereafter submitted to the court two more "Doctor's Chart Notes" from Dr. Mallek dated April 12, 2002 and April 29, 2002, stating that defendant could not undergo long-distance travel until June 21, due to an infection that had not healed properly after the surgery. The court again rescheduled sentencing to June 21.

On June 17, a report indicating defendant would not be able to appear for his sentencing hearing due to his medical condition was faxed directly to Judge Garofolo's chambers, purportedly from Dr. Mallek. The "Doctor's Chart Notes" stated that it was "very difficult" to put a "date specific time period" for defendant's recovery so "that he can be released from care." The note stated the follow-up care would require an additional forty-five to sixty days before defendant could travel, and Dr. Mallek would "be more than happy to report back . . . at the 45 day mark to give an update."

Over the next six months, as a result of receiving various medical documents from Dr. Mallek, the court rescheduled the defendant's sentencing from each of the following dates: August 16, 2002; October 10; November 22; and January 10, 2003. When defendant did not appear for sentencing on January 10, 2003, Judge Garofolo issued a bench warrant for his arrest. Defense counsel subsequently learned that defendant had been arrested by federal authorities in Miami, Florida on March 21, 2003 on federal fraud charges, and informed the court.

At the judge's direction, the State submitted a detailed certification as to steps it took to independently verify that Dr. Mallek was not a licensed South Carolina physician. There was no record, past or present, of either "Dr. Mallek" or the "Horry Neurological Group" with the South Carolina Medical Examiner's Office, the Horry County Business Licensing Association, the Myrtle Beach Chamber of Commerce, or the Horry Tax Office. The address used was that of a Subway Restaurant and attached gas station. The fax machine used was from a business in Myrtle Beach partly owned by defendant. An investigation of the October 5, 2001 accident report indicated that defendant, although alleging serious injuries from an automobile accident, had never filed a claim for personal injury or property damage against the driver who rear-ended him.

In order to support the charges against defendant for bail jumping, contempt, forgery and filing false documents, the State

sought evidence that would prove defendant was responsible for preparing and filing the fraudulent medical documents used to secure continuances. The State certified that the one potential witness, defendant's business partner at the time who presumably had equal access to the fax machine, could not be located. Therefore, it had no witnesses to attest to defendant's involvement in the scheme. According to the State, however, "the record shows that Mr. Barbone did communicate with the defendant regarding [the court] adjournments." The State contends it issued the subpoena because direct proof was needed that defendant submitted the fictitious documents to his attorney. Barbone would then submit the documents to Judge Garofolo to obtain adjournments of defendant's mandatory court appearances and forestall sentencing and imprisonment.

Following oral argument, Judge Garofolo denied defendant's motion to quash the subpoena in a written decision issued on November 17, 2003. The judge denied defendant's motion for reconsideration and stay of Barbone's grand jury subpoena by written order of December 3, 2003. On emergent application, we granted the motion for leave to appeal and stay without prejudice to either party and ordered acceleration of the appeal.

Public policy considerations have led the courts and legislature to include limited exceptions to the attorney-client privilege. *Fellerman v. Bradley,* 99 *N.J.* 493, 502, 493 *A.*2d 1239 (1985). Specifically, the "crime or fraud exception" expressly provides "such privilege shall not extend ... to a communication in the course of legal service sought or obtained in aid of the commission of a crime or a fraud." *N.J.S.A.* 2A:84–20(2)(a); *N.J.R.E.* 504(2)(a). This exception is "a statutory recognition of a situation in which the purpose of the privilege would not be served by its enforcement." *Fellerman, supra,* 99 *N.J.* at 503, 493 *A.*2d 1239. "A lawyer cannot be properly consulted professionally for advice to aid in the perpetration of a fraud on a court. The claim of 'privilege' is that of the client and a fraudulent object or purpose

puts him beyond" the scope of this protection. *Ibid.* (citing *In re Stein,* 1 *N.J.* 228, 236, 62 *A.*2d 801 (1949)).

A second statutory exception, *N.J.S.A.* 2A:84A–20(2)(a), applies when the holder knowingly and without coercion waives the privilege. *Kinsella v. Kinsella,* 150 *N.J.* 276, 300, 696 *A.*2d 556 (1997)(recognizing implicit waiver of the attorney client privilege "where the plaintiff has placed in issue a communication which goes to the heart of the claim in controversy") (citations omitted).

The Court recognized a third category where the attorney-client privilege would not extend to communications "even in the absence of an explicit statutory ... exception." *Kinsella, supra,* 150 *N.J.* at 299, 696 *A.*2d 556. The party seeking to pierce the privilege through this exception must meet the three-part test established in *In re Kozlov, supra,* 79 *N.J.* at 243–44, 398 *A.*2d 882:

> (1) there must be a legitimate need for the evidence; (2) the evidence must be relevant and material to the issue before the court; and (3) by a fair preponderance of the evidence, the party must show that the information cannot be secured from any less intrusive source.

Defendant resists the subpoena on the basis of the attorney-client privilege, relying on *In re Kozlov.* According to defendant, the tri-partite test of *Kozlov* remains a viable pre-requisite to an order piercing the privilege, even upon the crime or fraud exception. He contends the privilege here should not give way under the third prong of *Kozlov* because the information sought is obtainable from a less intrusive source. According to Barbone, all the evidence needed to indict and obtain a conviction against Ray is contained in the prosecutor's certification of its investigation, along with information at the State's disposal concerning defendant's addresses and businesses contained in the pre-sentence report.

The record supports the court's finding that the State has established a *prima facie* case of fraud against the court by defendant in submitting fictitious medical documentation regarding his accident, alleged surgery, and continuing inability to travel to New Jersey to conclude the criminal proceeding against him. It is clear that Barbone's legal services were sought or rendered

in aid of committing a crime or fraud, although unwittingly, when he forwarded to the court the medical documentation he presumably received from his client and obtained a three-month postponement of a status conference and a one-year delay in sentencing. In a well-reasoned opinion, Judge Garofolo found the *Kozlov* exception inapplicable because, pursuant to *N.J.S.A.* 2A:84A–20(2)(a), the privilege will not shield communications where attorney services are used in the perpetration of a crime or fraud. The court's ruling is consistent with our holding in *Horon Holding Corp. v. McKenzie,* 341 *N.J.Super.* 117, 125, 775 *A.*2d 111 (App. Div.2001), where we re-iterated the three circumstances where the privilege must cede, showing each in the disjunctive:

> ▮ Where legal services are sought or rendered in the aid of committing a crime or fraud, [2] where it has been waived by its holder, *or* [3] where the public interest demands that it give way because there is legitimate need for the information sought, it is relevant to the issue before the court, and it cannot be obtained from any less intrusive source.

[ (Citations omitted)(emphasis added).]

We find no error in the judge's conclusion that even if the *Kozlov* test were applicable, the State could not secure the "same evidence" from any other source. The State certified that it did not have "direct evidence" that defendant himself had a role in the crime. Thus, even if evidence were available from a less intrusive source, we agree with Judge Garofolo's conclusion that

> the quantum and quality of evidence available from Mr. Bar[b]one as a witness is far superior to that already possessed by the State which in large part is circumstantial. Thus, the "same evidence" is not otherwise available.

Accordingly, we affirm the trial court's decision denying defendant's motion to quash the subpoena, vacate the stay, and permit the grand jury to reconvene its proceedings.