**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4356-17T3

ASHLAND INC., INTERNATIONAL
SPECIALTY PRODUCTS INC.,
and ISP ENVIRONMENTAL
SERVICES INC.,

      Plaintiffs-Respondents,

v.

G-I HOLDINGS INC., GAF
CORPORATION, and BUILDING
MATERIALS CORPORATION OF
AMERICA, d/b/a GAF MATERIALS
CORPORATION,

      Defendants-Appellants.

_____

Argued December 19, 2018 – Decided April 10, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2331-15.

Sylvia E. Simson (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Sills Cummis & Gross PC, Andrew J. Rossman (Quinn Emanuel

Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, Jonathan B. Oblak (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, Tyler G. Whitmer (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, Sylvia E. Simson (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, and Joshua R. Rosenthal (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, attorneys; Jaimee L. Katz Sussner and Matthew L. Lippert, of counsel and on the briefs).

Michael R. Griffinger argued the cause for respondents (Gibbons PC, attorneys; Michael R. Griffinger, William S. Hatfield, Camille V. Otero, Jennifer A. Hradil, and Joshua R. Elias, on the brief).

PER CURIAM

On leave granted, defendants G-I Holdings Inc. (G-I), GAF Corporation (GAF), and Standard Industries Inc., appeal a March 22, 2018 Law Division order ruling certain documents protected by the attorney-co-client privilege could be disclosed to third parties, and denying the associated request to seal. For the reasons that follow, we now reverse.

Plaintiffs are Ashland LLC, International Specialty Products Inc. (ISP), and ISP Environmental Services Inc. (IES). In August 2011, Ashland acquired ISP and its subsidiaries from defendants. Thus, ISP became a subsidiary of Ashland. IES is a wholly owned subsidiary of ISP. Prior to the closing, counsel

2

for defendants, which then included ISP, transferred certain files to Ashland for review as part of Ashland's due diligence. To that point, counsel had represented all the Heyman Family Holdings, which included G-I, GAF, and ISP. Following the sale of ISP to Ashland, certain additional environmental shared legal files were copied to ISP's environmental counsel. Some counsel remained with the G-I parties, some attorneys stayed with the seller, while some were transferred to create a new legal department independently for ISP and its affiliates. The documents supplied prior to the closing were given to Ashland pursuant to a November 11, 2010 confidentiality agreement. That agreement specified that the proprietary information related to ISP was disclosed to Ashland solely in connection with the proposed acquisition of ISP and its subsidiaries. Certain memoranda now in dispute, found in shared legal files, were provided to ISP post-closing.

Ashland's acquisition of ISP included a superfund site listed for cleanup with the United State Environmental Protection Agency (EPA). The parties now dispute the environmental liability associated with that site, and whether the memoranda should be disclosed to the relevant third party, the EPA. Plaintiffs' action is intended to shift liability for the EPA cleanup cost to defendants.

A-4356-17T3

Plaintiffs seek to disclose the memoranda to the EPA and unseal the records related to it. Defendants take the position that although the memoranda may be relevant in the pending litigation between the co-clients who share the privilege, it cannot be disclosed to third parties and must be sealed. Defendants assert that absent an express waiver, no legal basis exists for disclosure to third parties. Their view is that the privilege continues, and binds Ashland, now the parent corporation of ISP, unless and until such time as they waive it.

In reliance on certain sections of the Restatement (Third) of the Law Governing Lawyers, which we discuss in greater detail further on, the judge concluded the privilege was dissolved by the litigation between the co-clients. Accordingly, the judge also held that under Rule 1:38-11(b), the documents did not need to be sealed as the necessary elements had not been met. In circumstances involving "the applicability of the attorney-client privilege, and its potential waiver" our review of the case is de novo. Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013).

I.

The common-law attorney-client privilege "protects communications between attorneys and clients from compelled disclosure." Teleglobe Commc'ns Corp. v. BCE, Inc., 493 F.3d 345, 359 (3d Cir. 2007). Such privilege will apply

if there was: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." Restatement (Third) of the Law Governing Lawyers § 68 (Am. Law Inst. 2000). "A communication" refers to any document, record, or expression between privileged persons. Id. § 69. "Privileged persons" include the client, lawyers, or agents that help facilitate attorney-client communications. Id. § 70. "[I]n confidence" refers to the communicating person's reasonable belief that the content of the communication is only with the privileged person. Id. § 71. Finally, "legal assistance" refers to a communication between a consulted lawyer and a client. Id. § 72.

Privilege can be waived if the holder, "contracted with anyone not to claim the right or privilege or, [] without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone." N.J.S.A. 2A:84A-29; see also Restatement (Third) of the Law Governing Lawyers § 79 ("The attorney-client privilege is waived if the client, the client's lawyer, or another authorized agent of the client voluntarily discloses the communication in a non-privileged communication."); id. § 79, cmt. g ("To constitute waiver, a disclosure must be voluntary. The disclosing person need not be aware that the communication was privileged, nor

specifically intend to waive the privilege."). It follows, that "[t]he attorney-client privilege is ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party" unless the third party's presence "is necessary to advance the representation." O'Boyle v. Borough of Longport, 218 N.J. 168, 186 (2014). Additionally, third party disclosure will not constitute a waiver if such presence was not reasonably anticipated. See N.J.S.A. 2A:84A-20(1)(c)(ii); Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 323 (2010).

Another exclusion exists if "[two] or more persons have employed a lawyer to act for them in common." N.J.S.A. 2A:84A-20(2). In this circumstance, if former joint clients later engage in adverse proceedings there will be no privilege between them, yet privilege will still apply in disclosure to third persons:

> (1) If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§ 68-72 and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.
>
> (2) Unless the co-clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between the co-clients in a subsequent adverse proceeding between them.

A-4356-17T3

> [Restatement (Third) of the Law Governing
> Lawyers § 75.]

Moreover, "in a subsequent proceeding in which former co-clients are adverse, one of them may not invoke the attorney-client privilege against the other with respect to communications involving either of them during the co-client relationship." Id. at cmt. d.

Two main rules govern the extent to which privileged information may be waived. Under the unilateral control rule, a privileged party in joint representation may waive privilege unilaterally. Teleglobe, 493 F.3d at 363. Pursuant to the bilateral control rule, co-clients may unilaterally waive privilege as between themselves in adverse proceedings, but the decision to compel disclosure to third parties requires consent from all co-clients. Ibid. Bilateral control is typically the preferred "general answer." Id. at 379. So, while a client may unilaterally waive its own privilege, "it may not, however, unilaterally waive the privilege as to any of the other joint clients' communications" without consent. Id. at 363 (citing Restatement (Third) of the Law Governing Lawyers § 75, cmt. e). Support for the bilateral control rule may be found in case law throughout the country. E.g., In re Fundamental Long Term Care, Inc., 489 B.R. 451, 476 (Bankr. M.D. Fla. 2013) (holding under the co-client exception and

common interest doctrine, "waiver of the privilege under those circumstances requires consent of all of the parties who share the privilege. . . . [And] prohibit[s] those parties from disclosing the communications or work product to third parties."); Arkin Kaplan Rice LLP v. Kaplan, 967 N.Y.S.2d 63, 64 (App. Div. 2013) (holding that privilege belongs to former co-clients and cannot be "unilaterally waiv[ed]" to benefit different co-plaintiffs who are unaffiliated with the original privilege).

In our view, the Law Division judge's reading of the Restatement was not correct. That co-clients engage in adverse proceedings does not automatically eliminate the privilege, absent agreement by all parties, in relation to third parties.

The overarching policy rationale for attorney-client privilege is supported by the "encouragement of free and full disclosure of information from the client to the attorney." Fellerman v. Bradley, 99 N.J. 493, 498 (1985). In a joint representation whereby "[two] or more persons have employed a lawyer to act for them in common" there is no privilege as between the joint-clients in subsequent adverse proceedings. N.J.S.A. 2A:84A-20(2).

Privilege will apply, however, to compelled disclosures to third persons. Restatement (Third) of the Law Governing Lawyers § 75. Pursuant to the

bilateral control rule, co-clients may waive privilege as between themselves in adverse proceedings, but the decision to compel disclosure to third parties requires consent from all co-clients. Teleglobe, 493 F.3d at 363; Restatement (Third) of the Law Governing Lawyers § 75.

As found in comment g of § 76 of the Restatement:

> Any member of a common-interest arrangement may invoke the privilege against third persons, even if the communication in question was not originally made by or addressed to the objecting member.
>
> In the absence of an agreement to the contrary, any member may waive the privilege with respect to that person's own communications. Correlatively, a member is not authorized to waive the privilege for another member's communication. If a document or other recording embodies communications from two or more members, a waiver is effective only if concurred in by all members whose communications are involved . . . .

Thus, we conclude that the bilateral control rule and supporting caselaw means that although the privilege can be waived as between co-clients in adverse proceedings, the decision to compel disclosure to third parties requires consent from all the co-clients. Teleglobe, 493 F.3d at 363. Although a co-client may unilaterally waive its own privilege, "it may not, . . . unilaterally waive the privilege as to any of the other joint clients' communications" without consent.

Ibid. Thus, although the privilege may be waived as between defendants and ISP, as to third parties, it requires the consent of all.

Ashland's acquisition of ISP did not make it a third party. The acquisition did not void defendants' right to assert the privilege as to third parties.

Defendants' factual assertion is unrefuted that the joint legal files were transferred to ISP, not to Ashland. The transfer was made on the assumption that the documents would be available for use by ISP's legal counsel solely for the benefit of that corporation. Mere transfer of the legal files, along with the assets and liabilities of the corporation, was not intended to constitute a waiver of the privilege. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985). When control of a corporation passes to new owners, the authority to assert and waive the attorney-client privilege, and the obligation to honor it with regard to a co-client, is transferred as well. Ibid. Ashland may now wish to waive that privilege, but to do so in relation to third parties such as the EPA requires defendants' consent. To conclude otherwise would mean that transfers of corporations would in every case dissolve any joint privilege. Such an unanticipated consequence of the acquisition of a corporation by another would not advance the benefits and public policy behind the attorney and co-clients, or common interest privilege. See Teleglobe, 493 F.3d at 368-69.

A-4356-17T3

Ashland argues that the environmental interest advanced by the cleanup, and the imposition of liability on defendants, implicate public policy concerns to the extent that the privilege should be abrogated. No assertion is made, however, that a crime or a fraud are being perpetrated such that the privilege would not hold. See N.J.S.A. 2A:84A-20(2) ("privilege shall not extend [] to a communication . . . in aid of the commission of a crime or a fraud."). The memoranda at issue were authored by attorneys setting forth only legal opinions. These are not the type of documents that equate to evidence requiring assessment of public policy as impacting the privilege.

## II.

It follows that the documents must be sealed. Rule 1:38-3(a) requires that court records are to be sealed when they include privileged communications. See N.J.S.A. 2A:84A-20(1). Accordingly, not only do we reverse the judge's findings about the waiver of the privilege, we also require that the disputed materials be sealed.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4356-17T3