238 N.J. Super. 509 (1989)
570 A.2d 53
IN RE GRAND JURY SUBPOENA AD TESTIFICANDUM SERVED ON LOUIS GONNELLA, ESQUIRE.
Superior Court of New Jersey, Law Division Bergen County.
Decided August 28, 1989.
*510 Dennis Calo, Acting First Assistant Prosecutor, for the State.
Brian J. Neary, for Louis Gonnella.
KUECHENMEISTER, J.S.C.
This case concerns itself with Louis Gonnella's motion to quash a grand jury subpoena served upon him by the Bergen County Prosecutor. The facts which led up to the issuance of the subpoena are as follows:
In late January of 1989, one John Martini and co-defendant, Theresa Afdahl, were arrested for kidnapping/murder of a local businessman, Irving Flax. Shortly thereafter, Louis Gonnella, a Bergen County Public Defender, was assigned to represent Mr. Martini on charges of capital murder. Mr. Gonnella's representation lasted until early June of 1989 when he informed his boss, Mr. Wagner, that he would no longer be able to serve as Mr. Martini's counsel.
Approximately June 15, 1989, the New Jersey Public Defender, Alfred A. Slocum, arranged for a meeting with the Acting Bergen County Prosecutor, John Holl. Mr. Slocum reported to *511 the Prosecutor certain conversations alleged to have taken place between Mr. Martini and Mr. Gonnella. The substance of these alleged conversations was to the effect that Mr. Martini wished Mr. Gonnella to see to it that Mr. Neal Frank, the assigned attorney for Mr. Martini's co-defendant, was removed from the case. Mr. Martini allegedly intimated that if this was not, in fact, done, he would have Mr. Frank killed. Mr. Slocum informed the Prosecutor that as a result of these alleged conversations both Mr. Frank and Mr. Gonnella were being removed as counsel from the case.
At this meeting between Mr. Slocum and Mr. Holl, it was suggested that Mr. Gonnella be contacted by the Prosecutor's Office for the purposes of substantiating these allegations so that the appropriate action could be taken by the Prosecutor's Office. Mr. Gonnella was, in fact, contacted. However he refused to divulge any information, maintaining that any and all conversations between himself and Mr. Martini were subject to the attorney-client privilege. Mr. Gonnella was then promptly served with a Grand Jury subpoena directing him to appear and testify concerning the alleged threats made by Mr. Martini involving Mr. Frank.
Mr. Gonnella, through his counsel, has filed this motion to quash the said Grand Jury subpoena on the grounds that any and all conversations he had with Mr. Martini were and are covered by the attorney-client privilege and to force him to testify would put a chilling effect on the future of this privilege. The State opposes the motion to quash on the grounds that the alleged conversations which are the subject of the subpoena fall within the "crime-fraud" exception to the attorney-client privilege and therefore, Mr. Gonnella should be ordered to come forward and divulge any information pertinent to this investigation.

I. ATTORNEY-CLIENT PRIVILEGE
The attorney-client privilege is one of the most deeply rooted privileges in our justice system. It is codified in N.J.S. *512 2A:84A-20 and Evidence Rule 26 and has been upheld by our own Supreme Court most recently in Matter of Nackson, 114 N.J. 527, 555 A.2d 1101 (1989). The purpose of the privilege is to promote full and open discussion between a client and his attorney so that the attorney may provide the client with the best representation under the circumstances of each case. In criminal cases, the privilege is of utmost importance. Our Supreme Court equates it "with an intimacy equal to that of the confessional." State v. Sugar, 84 N.J. 1, 13, 417 A.2d 474 (1980).
However, as important and sacrosanct as this privilege may be, it is not absolute. See, Fellerman v. Bradley, 99 N.J. 493, 493 A.2d 1239 (1985); In Re Richardson, 31 N.J. 391, 157 A.2d 695 (1960); In Re Selser, 15 N.J. 393, 105 A.2d 395 (1954); In Re Toscano, 13 N.J. 418, 100 A.2d 170 (1953); In the Matter of Stein, 1 N.J. 228, 62 A.2d 801 (1949). The privilege is limited to those situations in which lawful legal advice is the object of the relationship. Fellerman v. Bradley, at 504, 493 A.2d 1239. And, the privilege "has never prevented the disclosure of communications made in furtherance of a crime". In Re Sawyer's Petition, 229 F.2d 805, 808 (7th Cir.1956).
In fact, Evidence Rule 26(2)(a) and N.J.S. 2A:84A-20(2)(a) both state:
"Exceptions. Such privilege shall not extend (a) to a communication in the course of legal service sought or obtained in aid of the commissions of a crime or a fraud ..."
(emphasis added). The Rules of Professional Conduct, specifically Rule 1.6(b)(1), require that
"(b)[a] lawyer shall reveal such information to the proper authorities, as soon as, and to the extent the lawyer reasonably believes necessary, to prevent the client
(1) from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or substantial injury to the financial interest or property of another."
In this case, the Court is faced with two factors which distinguish it from reported case law dealing with the piercing of the attorney-client privilege. First, while unquestionably the *513 attorney-client privilege outlasts the actual attorney-client relationship, Mr. Gonnella no longer represents Mr. Martini in any capacity. Second, there is only unsubstantiated hearsay before this Court regarding the alleged threats made by Mr. Martini. While these factors alone would not necessarily tip the scale one way or the other, they, taken along with the total factual situation at hand, weigh against upholding the privilege in this instance.
In response to this, defense counsel would proffer two well founded arguments. First, due to the fact that the attorney-client privilege is so sacred, to allow that privilege to be infringed upon would be to "drive a chilling wedge" between the attorney and his client. United States v. Klubock, 832 F.2d 649 (1st Cir.1987). By forcing the attorney to testify before a Grand Jury would put severe doubts in a client's mind about his ability to speak openly and freely with his attorney in the future. However, as previously noted, Mr. Gonnella is no longer engaged in any type of professional relationship with Mr. Martini. Thus, Mr. Martini will not be faced with the stated dilemma.
It can be just as vigorously argued that by forcing Mr. Gonnella to testify before the Grand Jury, it may jeopardize his future relationships with his clients. While this may be true to some extent, it must be recognized that Mr. Gonnella has both a professional responsibility, R.P.C. 1.6(b)(1), as well as a civic duty to prevent a potential crime from occurring whenever possible. Although not every one of Mr. Gonnella's clients, present or future, may understand this, it is unfortunately a chance that must be taken.
Secondly, Mr. Gonnella would argue that, as required in In Re Farber, 78 N.J. 259, 394 A.2d 330 cert. den., 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), if the information "... could ... be secured from any less intrusive source," the attorney-client privilege must be upheld. Here, Mr. Gonnella argues that since Mr. Slocum is the person who went to the *514 Prosecutor to report the alleged crimes, he should be the one called to testify at the Grand Jury.
This argument is not totally unjustified. Mr. Gonnella has done nothing more than inform his boss, Mr. Wagner, that he would be unable to represent Mr. Martini any longer. Mr. Wagner then reported this to Mr. Slocum who in turn spoke to the Bergen County Prosecutor. Mr. Gonnella never participated in any conversations about this case outside of his own "firm". He has even refused to divulge any information to this Court in an in-camera proceeding. Thus, the only information available is that given by Mr. Slocum to Mr. Holl and therefore, the suggestion that Mr. Slocum be called to the Grand Jury is not untenable.
However, finding Mr. Slocum to be a "less intrusive source" in this instance would only serve to prolong the time when Mr. Gonnella may actually be called to testify. For example, suppose the motion to quash would be granted and Mr. Slocum would be called to testify at the Grand Jury. If an indictment should be handed up, Mr. Gonnella would then be called to testify at the eventual trial because, although hearsay evidence is admissible to secure an indictment, it is not admissible at trial. Thus, even to accept the "less intrusive source" argument, is not to solve the real problem. Be it a week from now before the Grand Jury, or six months from now at trial, Mr. Gonnella will most assuredly be called to testify.
Finally, notwithstanding the above, the privilege has never been held to attach to communications which the client intends to be divulged to third persons. In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir.1984); United States v. Cote, 456 F.2d 142 (8th Cir.1972); Colton v. United States, 306 F.2d 633 (2d Cir.1962); cert. den. 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). Clearly, in this case, if the threats were in fact made by Mr. Martini, he intended that they would be communicated to Mr. Frank. This in and of itself would operate as a waiver of the privilege.
*515 This case has been most troublesome for the Court. It has been asked to balance the State's interests of law enforcement against an attorney's ethical obligation to keep communications between himself and his client confidential. Yet the law is clear. The type of communications alleged to have taken place between Mr. Gonnella and Mr. Martini is not privileged. Therefore, the motion to quash the subpoena must be denied.

II. THE GRAND JURY PROCEEDING
While this Court has decided that Mr. Gonnella may be called to testify before the Grand Jury, the actual questioning is to be very limited in scope. Mr. Gonnella may be questioned only about his attorney-client relationship with Mr. Martini insofar as it relates to the alleged threats made against Mr. Frank. This proceeding is not to be used as a fishing expedition by the prosecutor to obtain information pertinent to the murder charges against Mr. Martini.
The prosecutor has submitted to this Court a list of the questions he intends to ask. Of course, there may be some need for elaboration based upon the responses actually given by Mr. Gonnella. However, the prosecutor is advised to stick as closely as possible to the list of questions previously submitted to this Court. In that way, there should be no violation of the attorney-client privilege with respect to all other conversations between Mr. Gonnella and Mr. Martini. The prosecutor must keep in mind, at all times, that there were conversations between the two which do indeed remain privileged and all precaution must be taken to preserve their sanctity.