785 A.2d 955 (2000)
345 N.J. Super. 515
OCEAN SPRAY CRANBERRIES, INC., Plaintiff,
v.
HOLT CARGO SYSTEMS, INC., Defendant.
Superior Court of New Jersey, Law Division, Camden County.
Decided October 13, 2000.
*956 *957 Steven D. Johnson, Frederick E. Blakelock, Hecker, Brown, Sherry & Johnson, Philadelphia, PA, for Ocean Spray Cranberries, Inc.
Richard J. Reisert, Clark, Atcheson & Reisert, Eugene Mattioni, Mattioni, LTD, New York City, for Holt Cargo Systems, Inc.
COOK, J.S.C.
At issue is the applicability of the "crime-fraud" exception to attorney-client and work-product privileges asserted by defendant Holt Cargo Systems, Inc. ("Holt"), in response to document discovery requests of plaintiff Ocean Spray Cranberries, Inc. ("Ocean Spray").[1]
By way of background, Ocean Spray sues Holt for damages for the spoilage of 6,500,000 pounds of Ocean Spray cranberries while they were stored in Holt's warehouse facilities in Gloucester City, New Jersey in 1995. Holt was to store these cranberries in a frozen condition. Ocean Spray did not discover that the cranberries had been damaged and spoiled, until they were shipped back to Ocean Spray from Holt's warehouse several months later. Holt did not inform Ocean Spray of the spoilage, and in response to Ocean Spray's inquiry, Holt steadfastly denied that any spoilage occurred in its facility. Holt's counsel further certified in a March 13, 2000 interrogatory answer that:
During the period of time that the product was stored at Holt Cargo's facility, Holt Cargo never independently determined or observed that the product was damaged, spoiled, deteriorated or otherwise unfit, and no one from Holt ever saw any signs or indications of mold, shrinkage, off or bad colors, or any other indications that the product may have been spoiled or deteriorated. Holt Cargo's first understanding that there may have been a problem with the product was when it was contacted by Ocean Spray. (Answer to interrogatory no. 28).
The matter came before the Court on October 6, 2000, on Ocean Spray's motion to compel Holt to produce certain documents, including a document dated May 1, 1997 and referred to as the "Dice" memo. That document, a memorandum to Holt's in-house general counsel, John Evans, Esq., from Paul Dice, its risk management department head, along with several other documents, each of which Holt now claims are privileged, were not identified by Holt *958 until it submitted a privilege log following the filing of Ocean Spray's motion to produce. Holt's belated revelation of the existence of these documents comes several years after the cranberry losses in 1995-96 giving rise to Ocean Spray's claim against Holt occurred, and more than three years since Holt had possession of the "Dice" memo and the other documents, and knowledge of their relevance to Ocean Spray's claim. Holt's revelation also comes well after the filing of this action and the commencement of pretrial discovery. Holt's failure to respond to Ocean Spray's documents discovery request with a description of the nature of the documents claimed to be privileged, constitutes a violation of R.4:10-2(e), which prescribes the manner in which a party is required to claim privilege as the basis for withholding information demanded by way of discovery.
Holt resists disclosure of the May 1, 1997 "Dice" memo,[2] along with several other documents, asserting they are attorneyclient or work product privileged. Holt contends that it has been completely truthful about its lack of any knowledge of spoilage of the cranberries, including its denial in its March 13, 2000 interrogatory answer, supra, that it ever determined or observed any damaged, spoiled, deteriorated or otherwise unfit cranberries, or any signs or indications of shrinkage, off or bad colors, or any other indications that the cranberries may have been spoiled or deteriorated. Holt further contends that besides these documents being privileged, Ocean Spray already has all the facts and other information contained in the "Dice" memo and the other documents anyhow.
As discussed below, Ocean Spray has made a prima facie showing that the "Dice" memo and other Holt documents fall within the "fraud" exception to the attorney-client and work product privileges. Further, Holt's trial counsel, Mr. Reisert, who read the "Dice" memo, albeit just recently, candidly advised the Court and parties at the October 6, 2000 motion hearing that the "Dice" memo does contain evidence of fabrication by Holt.
In view of the prima facie showing by Ocean Spray, the Court conducted an in camera inspection of the "Dice" memo and other documents that Holt listed in its 11th hour "privilege log". Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 554-55, 691 A.2d 321 (1997). There is abundant authority for the proposition that in camera review of claimed confidential material is an approved and essential step when a privilege is invoked. Corsie v. Campanalonga, 317 N.J.Super. 177, 184, 721 A.2d 733 (App.Div.1998) (citations omitted). The motion judge should conduct an in camera inspection; otherwise the existence or application of the claimed privilege is unsettled. Id. Having done so, the Court has determined that the "Dice" memo falls within the fraud exception, as do several other Holt documents, and thus neither the "Dice" memo nor the several other Holt documents are attorney-client or work product privileged. Moreover, Ocean Spray has satisfactorily demonstrated a substantial need for these documents and that it cannot obtain their substantial equivalents through other sources.
Each of the documents listed in Holt's privilege log is discussed below, including the "Dice" memo. A review demonstrates that the "Dice" memo (and others) is a "smoking gun" that shows intentional coverup, concealment, deceit, deception and *959 stonewalling of the truth by Holt. The "Dice" memo, for example, uses the term, "fabricated", no less than a dozen times.

THE CRIME-FRAUD EXCEPTION
The attorney-client privilege does not extend to "communications" "in the course of legal service sought or obtained in aid of the commission of a crime or a fraud". N.J.R.E. 504(2)(a). The workproduct privilege is also subject to the "crime-fraud" exception. United States v. Zolin, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); In re Grand Jury Proceedings (FMC), 604 F.2d 798, 802-03 (3d Cir.1979); Haines v. Liggett Group, Inc., 140 F.R.D. 681, 689-90 (D.N.J.1992), rev'd on other grounds, 975 F.2d 81 (3d Cir.1992).
"Fraud" includes civil as well as criminal fraud. There need not be a tortious fraud in the conventional sense. Rather, public policy requires that the term fraud "be given the broadest interpretation". It includes virtually all kinds of deception and deceit, even though they might not otherwise warrant criminal or civil sanctions. In re Callan, 122 N.J.Super. 479, 300 A.2d 868 (Ch.Div.), aff'd 126 N.J.Super. 103, 312 A.2d 881 (App.Div.1973), rev'd on other grounds 66 N.J. 401, 331 A.2d 612 (1975); Matter of Yaccarino, 101 N.J. 342, 383-84, 502 A.2d 3 (1985). The crime/fraud exception "encompasses a type of communication that is alien to the fundamental reasons that underlie the privilege", Fellerman v. Bradley, 99 N.J. 493, 505, 493 A.2d 1239 (1985), because "[t]he privilege is limited to those situations in which lawful legal advice is the object of the relationship." In re Gonnella, 238 N.J.Super. 509, 512, 570 A.2d 53 (Law Div.1989). The exception applies even if the attorney is unaware of the client's criminal or fraudulent intent, and applies of course where the attorney knows of the forbidden goal. In re Selser, 15 N.J. 393, 105 A.2d 395 (1954); In the Matter of Stein, 1 N.J. 228, 62 A.2d 801 (1949). Where an "attorney-client privileged" memo contains evidence or suggestions of false information, the crime/fraud exception applies. Nat. Utility Service, Inc. v. Sunshine Biscuits, Inc., 301 N.J.Super. 610, 618, 694 A.2d 319 (App. Div.1997).
The "fraud" exception is interpreted broadly to include, e.g., "[c]onfederating with clients to allow court and [opposing] counsel to labor under a misapprehension as to the true state of affairs ..." Sunshine Biscuits, supra, 301 N.J.Super. at 616, 694 A.2d 319 (quoting Fellerman, supra, 99 N.J. at 503, 493 A.2d 1239, and In re Callan, 122 N.J.Super. at 496, 300 A.2d 868) (emphasis added).[3] "There is no reason to believe that the use of the word "fraud" in [N.J.R.E. 504(2)(a)] is to be limited to conventional notions of tortious frauds. Acts constituting fraud are as broad and as varied as the human mind can invent. Deception and deceit in any form universally connote fraud ...." In summary, the "fraud" exception is to be given the broadest interpretation. Id.
The party seeking to overcome the privilege and obtain access to the communication must make a prima facie showing of fraud or crime, and the prima facie showing must be made by evidence other than the contested communication itself. Sunshine Biscuits, supra. Other courts have referred to the burden as being a showing of probable cause to believe that a crime or fraud had been committed. As *960 noted in In re Grand Jury Subpoena Duces, 731 F.2d 1032, 1039 (2d Cir.1984), there is little difference between the two tests, since both require that a prudent person have a reasonable basis to suspect perpetration or attempted perpetration of a fraud or crime.

THE PRIMA FACIE SHOWING OF FRAUD
Ocean Spray has made a strong prima facie showing of fraud, without of course resort to the contested documents themselves, since Holt has refused to allow Ocean Spray any access to the "Dice" memorandum or other documents. For example, Ocean Spray points out that despite the categorical denial of Holt in its interrogatory answer signed by its trial counsel, Mr. Reisert, that Holt ever saw or knew about any problem with the cranberries while they were stored at Holt's facility,[4] there is substantial evidence showing that this and other interrogatory answers of Holt are false, and that several key Holt employees have likely given false or deceptive deposition testimony. Also, although never advising Ocean Spray of problems with its refrigeration-freezing equipment at the time, Holt now admits there were equipment problems. Ocean Spray also asserts that the magnitude of the damageover 6 million pounds of rotted cranberriescould not have gone unnoticed by Holt. Ocean Spray asserts its suspicions are bolstered by deposition testimony of several Holt warehouse employees, revealing that Holt engaged in a massive cleanup of cranberry juices on the warehouse floor caused by the frozen berries thawing and rotting in above-freezing temperatures, and Holt's subsequent movement of large quantities of cranberries to another warehouse that had functioning freezing equipment, to conceal the enormity of the damage. Further, Mr. Gordon, Ocean Spray's environmental specialist, certifies that the initial lot of cranberries shipped back to Ocean Spray from Holt's warehouse were spoiled, and as a result he and other Ocean Spray representatives went to Holt's warehouse. There they saw that many bins of cranberries had large drops in weight from the loss of cranberry juices, the fruit was shrunken, shriveled and moldy, there was a stench from fermented cranberries, fruit flies were frozen on the cranberries, and there were frozen footprints mashed in the fruit. There were also marks on the warehouse floor created by acidic juice from cranberries that had thawed and leaked their juices onto the floor, as well as physical signs and "cargo tally sheets" showing that Holt had moved the cranberries from one storage location to another. Spoiled cranberries were also found inside one of Holt's scrubbing machines, along with brush marks on the floor and spoiled cranberries in the corners that the scrubbing machine couldn't reach.
In its opposition to Ocean Spray's documents production motion, Holt submitted a certification of its in-house general counsel, John Evans, Esq., asserting that the "Dice" memo is attorney-client and work product privileged, and that Ocean Spray already has the equivalent of the "Dice" memo. The falsity of the latter assertion is exposed by the contents of the Dice memo itself. Holt also submitted the certification of its trial counsel, Mr. Reisert, which essentially parrots that of Mr. Evans. The substance of both attorneys' certifications is that Holt has told Ocean Spray the whole truth about what happened to their cranberries while in storage at Holt, including the whole truth about what Holt knew and when it knew it.
*961 These representations are belied by the overwhelming evidence to the contrary produced by Ocean Spray in its prima facie presentation, as well as by the revelation of Mr. Reisert at the motion hearing that the "Dice" memo contains evidence of fabrication by Holt, not to mention by the contents of the "Dice" memo discussed below, which Mr. Evans had back in May, 1997. Thus, a pattern of deception and deceit by Holt emerges. Indeed, Ocean Spray's well-grounded suspicion and its prima facie showing of fraud is now confirmed by Holt's counsel's concession and revelation that the "Dice" memo contains evidence of fabrication.

THE IN-CAMERA REVIEW
Besides the "external" evidence, fraud is now conclusively established by the Court's in camera review of the contents of the "Dice" memo and other documents that Holt asserts are privileged. The May 1, 1997, 20 page memo of Dice to Evans is rife with documentation of coverup, fraud, deception, fabrication, deceit and false information by Holt as to what it knew of the spoilage and damage to the millions of pounds of Ocean Spray cranberries in the Holt warehouse, when it knew it, how it deceived Ocean Spray, and how it has concealed, and through its March 13, 2000 answer to Ocean Spray interrogatory no. 28 has continued to conceal, the truth about what Holt knew happened to the cranberries, and how and when it knew it. Dice tells Evans no less than 12 times in this memo about "fabricated" (Dice's word) documents and information; about phony temperature readings; about storage boxes or areas at Holt undisclosed to Ocean Spray where its cranberries were stored and were spoiled for lack of proper freezing temperatures and/or freezing equipment; about a scheme whereby Holt employees recorded phony temperature entries at will; about false temperature reading records and storage area designations being sent by Holt to Ocean Spray; about non-disclosure of out-of-service freezer equipment; about thawing and spoilage so bad that a "sea of red" of cranberry juice flooded a warehouse floor and adjacent parking lot; and about "stone-walling" on Holt's part. The Dice memo is figuratively a "smoking gun", and a classic example of the fraud exception to the attorney-client and work product privileges. The pattern of fraud carried out by Holt documented in the "Dice" memo has continued for years, including in its March 1, 2000 answer to Ocean Spray interrogatory no. 28. It is replete with references to deception, deceit and false information which "in any form connote fraud." Fellerman, supra. This is not only a disturbing document, but also most disturbing are the actions of Holt and its general counsel, Mr. Evans, when, in interrogatory answers and in his certification, they continue to coverup the truth.
Several other Holt documents claimed to be privileged also evidence Holt's efforts to conceal the truth. For example, an October 1996 memo from Dice to Evans details how the failure of the largest of Holt's three compressors for freezing, and its being out of service for a lengthy period, caused the Ocean Spray cranberries to become hydrated and have a raisin-like appearance. It confirms Holt's coverup of the problem, and the false temperature records Holt gave to Ocean Spray. August 1997 notes of Dice to Evans also evidence Holt's coverup, including references to the "sea of red" event in October, 1995 where the cranberries were seen thawed and draining red juice, as well as the false temperature records, and other evidence of fabrication. There are also other handwritten notes of Dice of interviews with Holt employees, which he claimed in his deposition testimony no *962 longer existed. Those notes document that the Ocean Spray cranberries were subjected to a "thaw-freeze-thaw" in the Holt warehouse, with actual temperatures in certain storage areas never coming down below the freezing point.
Based on an in-camera review of these Holt documents, as well as Mr. Reisert's epiphany at the motion hearing, it is clear that Holt embarked on a campaign to cover up the truth about the spoilage of Ocean Spray's cranberries at Holt's warehouse. Its campaign to hide the truth includes Holt's refusal to disclose the truth, and its continued denial of any knowledge of cranberry spoilage at its warehouse, in both interrogatory answers, and the certification of its in-house counsel. The "fraud" exception to the attorney-client privilege is clearly established. Thus, the "Dice" memo and the other Holt documents described above are not protected from disclosure by the attorney-client privilege, nor are any of those documents protected by a work product privilege, since the crime/fraud exception extends to claims of work product privilege, as well as attorney-client privilege. Further, Ocean Spray has also clearly demonstrated a substantial need for disclosure of the "Dice" memo, and has just as clearly shown that it cannot obtain the substantial equivalent of these documents by other means. Accordingly, Holt must produce the documents to Ocean Spray.

HOLT'S REQUEST THAT THE HOLT DOCUMENTS, THE MOTION PROCEEDINGS AND THE OPINION OF THE COURT BE SEALED
At the conclusion of the motion hearing, the Court's ruling compelling Holt to produce the documents was orally placed on the record, in open court, along with its findings and reasons. Holt subsequently moved to have the motion proceedings, the Court's opinion and the Holt documents sealed, until completion of appellate review.[5] Ocean Spray opposed Holt's application to seal.
Resolution of the issue of the sealing of court records must begin with an examination of R.1:2-1 and R.4:10-3, and compliance with the standards prescribed in Hammock by Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 662 A.2d 546 (1995). Hammock articulates a presumption in favor of public access to court records in civil actions. See also Pressler, Current N.J. Court Rules, Comment R.1:2-1[8] (Gann). Holt articulates no basis to seal the proceedings and the Court's opinion in the matter. As noted, the motion hearing and the Court's oral findings, reasons and rulings at the motion hearing were conducted in public.
Holt relies on Haines v. Liggett Group, 975 F.2d 81 (3d Cir.1992) for the proposition that the Holt documents which the Court found not to be privileged should be kept under seal until the appeal process is completed. The Haines case was later circumscribed and criticized by the Third Circuit in Glenmede Trust Co. v. Thompson, 56 F.3d 476 (1995), which Holt fails to cite. There, the attorney-client privilege was raised by the defendant-trust company to bar production of documents by defendant's law firm. The trial court rejected defendant's privilege claim and denied defendant's motion for a protective order. Affirming the trial court's decision, the Glenmede Court observed that in Haines:
We did not intend, however, to establish a steadfast rule that protective orders *963 must always issue to protect the privileged character of the materials sought in discovery until all avenues of appeal, including appeal from a final judgment, are exhausted. Requiring the issuance of a protective order in all circumstances where a district court has determined that an exception to the attorney-client privilege applies thwarts our policy of open proceedings absent a showing of good cause to close. Id. at 485.
As in Glenmede, Holt also fails to make a showing of good cause to seal the Holt documents, the motion proceedings and the Court's opinion. Absent such showing, the issuance of a protective order where the Court has determined that there is overwhelming evidence of fraud, deceit and fabrication on Holt's part, and that the "fraud" exception to any claimed attorneyclient or work product privilege applies, would be to thwart the policy of open proceedings. Finally, the Court notes that Holt never made any request in advance of or during the motion hearing to close the proceeding or seal the record. Thus, sealing of the proceedings, the record, the Court's decision, both oral and written, or the Holt documents found not to be privileged would be most inappropriate.
NOTES
[1] This opinion supplements the Court's earlier oral and written decisions compelling Holt to produce the documents addressed herein.
[2] Holt did not reveal the existence of what Holt now identifies as the May 1, 1997 memo of Paul Dice until the March, 2000 deposition of Paul Dice, at which time Holt asserted attorney-client privilege, and claimed the "Dice" memo was lost.
[3] In Sunshine Biscuits, the communication at issue was a memorandum of Sunshine's inhouse counsel to its corporate controller. There was no "fraud" involved because there was no evidence or suggestion of false information. Id. at 618-19, 694 A.2d 319.
[4] As discussed infra, in camera review of the "Dice" memorandum reveals that the above interrogatory answer of Holt is totally incredible and a falsehood.
[5] The Holt documents at issue were each marked as exhibits at the motion hearing. Holt did not seek appellate review.