# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1625-23

JANE DOES #1 - 4,

     Plaintiffs,

v.

UNION OF ORTHODOX
JEWISH CONGREGATIONS
OF AMERICA, NATIONAL
CONFERENCE OF
SYNAGOGUE YOUTH,
NATIONAL CONFERENCE OF
SYNAGOGUE YOUTH OF
NEW JERSEY,

     Defendants-Appellants,

and

BARUCH LANNER,

     Defendant.

_____

JANE DOE #5,

     Plaintiff-Respondent,

v.

UNION OF ORTHODOX
JEWISH CONGRETATIONS
OF AMERICA, NATIONAL
CONFERENCE OF
SYNAGOGUE YOUTH,
NATIONAL CONFERENCE OF
SYNAGOGUE YOUTH OF
NEW JERSEY,

      Defendants-Appellants,

and

HILLEL YESHIVA HIGH
SCHOOL and BARUCH
LANNER,

      Defendants.

_____

> Argued July 30, 2024 – Decided September 16, 2024
>
> Before Judges Rose and Gummer.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-6796-21 and L-6838-21.
>
> Jan Alan Brody argued the cause for appellants (Carella, Byrne, Cecchi, Brody & Agnello, PC, attorneys; Jan Alan Brody, Robert J. Vasquez and Sean M. Kiley, on the briefs).
>
> Michael J. McFarland argued the cause for respondent Jane Doe #5 (Laffey Bucci D'Andrea Reich & Ryan LLC, attorneys; Michael J. McFarland, on the brief).

A-1625-23

PER CURIAM

In these matters, five adult women[1] filed actions in the Law Division in November 2021, asserting they were sexually and physically assaulted as children decades earlier by defendant Baruch Lanner when he was employed as a rabbi by defendants Orthodox Jewish Congregations of America (OU), National Conference of Synagogue Youth (NCSY), and National Conference of Synagogue Youth of New Jersey (NCSYNJ) (collectively, OU).[2] During discovery, the motion court granted plaintiffs' motion to compel the "Internal Report" memorializing the investigation conducted by the National Conference of Synagogue Youth Special Commission, an independent body appointed by OU to investigate its role in Lanner's misconduct. In its oral decision, the court rejected defendants' argument that the report was protected from disclosure under the attorney-client privilege and work-product doctrine.

---

[1] Prior to oral argument before us, Jane Does 1 through 4 settled their claims against defendants and the first underlying action, Docket No. MID-L-6796-21, was dismissed with prejudice by stipulation. Accordingly, Jane Does 1-4 are no longer parties to this appeal. Although only the claims raised by Doe 5 in the second underlying action, Docket No. MID-L-6838-21, are at issue in this appeal, because all five plaintiffs asserted substantially similar contentions, we use "plaintiffs" in this opinion for consistency with the parties' briefs and the motion court's opinion.

[2] NCSY and NCSYNJ are assumed names of OU.

3

We granted defendants leave to appeal from the December 29, 2023 memorializing order. We now vacate the order and remand for the court to conduct an in camera review of the Internal Report and a plenary hearing addressing the relationship between OU and the Commission.

I.

The allegations against Lanner came to light in June 2000, when The New York Jewish Week published "Stolen Innocence," an article detailing the allegations of former NCSY members. Two years later, Lanner was convicted of sexually abusing two victims.

In the interim, OU's Board of Directors responded to the article and public backlash by appointing the NCSY Special Commission to conduct an independent investigation of the allegations emanating from the charges against Lanner and the OU's role in administering the NCSY. To assist its investigation, the Commission retained the legal services of Debevoise & Plimpton LLP.

In December 2000, the Commission confidentially issued its "Internal Report" to OU President, Mandell Ganchrow, M.D., and select members of OU's Board. In addition to the Internal Report, at the Commission's direction, the Debevoise Firm prepared a "Public Summary," reflecting – as the title suggests – a non-confidential summary of the investigation's conclusions and

4

recommendations. Accordingly, the Public Summary is devoid of attorney-client communications, legal advice, or counsels' legal impressions. Spanning more than fifty pages, the Public Summary sets forth the Commission's factual findings and conclusions "that Lenner engaged in broad patterns of inappropriate and abusive behavior toward various NCSY students over many years." The Public Summary also notes the "similarities to and differences from the [Internal] Report," which is "332 pages in length, consists of seven parts, and attaches 104 documentary exhibits."

During discovery in the present matter, defendants provided to plaintiffs the Public Summary, but withheld the Internal Report, without expressly claiming the attorney-client privilege and work-product doctrine protected its disclosure. Plaintiffs moved to compel the Internal Report, including exhibits, and for the production of a privilege log.

Defendants opposed the motion, claiming the Internal Report was privileged, but did not provide a privilege log.[3] To support their opposition, defendants filed the certifications of: (1) Richard M. Joel, Esq., a current member of the OU, who served as chairman of the Commission; and (2) Bruce

---

[3] According to plaintiffs' supplemental responding brief on appeal, defendants provided a four-volume, 330-page privilege log on the eve of oral argument before the motion court.

E. Yannett, Esq., a current partner of the Debevoise Firm, who led the investigation.

Joel averred the Commission hired the Debevoise Firm to "assess and advise on the OU's legal position and potential liability to third persons"; "assist in the conduct of the investigation"; "prepare a confidential report of its findings, conclusions[,] and recommendations"; and prepare and issue a public report that "would reflect a non-confidential summary of the findings, conclusions[,] and recommendations from the investigation." In his certification, Yannett made similar assertions, elaborating:

> From the outset, the Commission, the OU[,] and the Debevoise Firm anticipated that Lanner's alleged conduct could result in multiple lawsuits against the OU by the alleged victims, such as those brought in these consolidated actions, and by OU employees, if any were disciplined or discharged based upon the Commission's findings. Therefore, one of the primary purposes of the preparation of the Initial Report was the Commission's, the OU's, and the Debevoise Firm's anticipation of and concern about potential litigation. Accordingly, the commission, the OU[,] and the Debevoise Firm proceeded with the intention and understanding that the communications and documents prepared in connection with the matter, including the Internal Report, would constitute "work product." Those communications and documents were maintained in confidence and not disclosed to third parties.

A-1625-23

In addition to work product, the Commission, the OU[,] and the Debevoise Firm proceeded with the intention and understanding that communications and other documents exchanged between the members of the Commission and the Debevoise Firm's attorneys seeking, providing or reflecting legal advice in connection with the matter as well as communications and other documents exchanged among Dr. Ganchrow, the designated Board members[,] and the Debevoise Firm's attorneys seeking, providing or reflecting legal advice related to this matter would be protected from disclosure by the attorney-client privilege. Those materials included, but were not limited to, correspondence, memoranda, drafts of the Internal Report, drafts of the Public Summary[,] and the final Internal Report itself. Those materials were maintained in confidence and were not disclosed to third parties.

In reply, plaintiffs argued defendants' opposition was the first time they claimed the Internal Report was privileged. Plaintiffs countered the certifications were conclusory and "the stated purpose of the Commission's work was to conduct an investigation into Lanner's misconduct and the OU's role in enabling it."

The motion court held two rounds of oral argument permitting, in the interim, defendants to file a sur-reply and plaintiffs to file a sur-sur-reply. Notably, defendants did not submit the Internal Report for the court's in camera inspection – and objected during the first argument when the court inquired

7

whether a review would assist in its decision.  Plaintiff, however, was amenable to the court's inquiry.

Following the second argument, the court reserved decision and thereafter issued a lengthy decision from the bench, setting forth the pertinent facts and procedural history; the salient findings contained in the Public Summary; and the governing law.  Without having reviewed the Internal Report in camera, the court found the Public Summary "makes no legal conclusions" and, "similar to the [Internal] Report, was authored by members of the Commission, not by any lawyers and not by anybody affiliated with the [Debevoise Firm].

The court concluded the Internal Report was not protected by the attorney-client privilege or the work-product doctrine.  The court further found assuming arguendo "any attorney-client privilege existed," the privilege belonged to the Commission and not the OU.  The court thus granted plaintiffs' motion to compel production of the Internal Report with exhibits.  The court also ordered defendants to produce a privilege log pertaining to the Internal Report.

## II.

Seminal principles guide our review.  "Generally, we accord substantial deference to a trial court's disposition of a discovery dispute."  Brugaletta v. Garcia, 234 N.J. 225, 240 (2018).  "[A]ppellate courts are not to intervene but

instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). Although "New Jersey's discovery rules are to be construed liberally in favor of broad pretrial discovery," Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997), privileged documents and communications are not discoverable, R. 4:10-2(a) (providing broad discovery of non-privileged information). We review de novo "the applicability of the attorney-client privilege," Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013), and, because it is codified in a court rule, the work-product doctrine, see Matter of A.D., 477 N.J. Super 288, 298 (App. Div. 2023).

N.J.R.E. 504 and N.J.S.A. 2A:84A-20 provide communications made in professional confidence between an attorney and a client are privileged, unless knowingly made within the hearing of a person whose presence nullifies the privilege. Where two or more people employ a lawyer to act for them in common, none can assert the privilege against the others for communications involving that matter. N.J.S.A. 2A:84A-20(2).

The attorney-client privilege "protects only those communications expected or intended to be confidential." O'Boyle v. Borough of Longport, 218

N.J. 168, 185 (2014). "The privilege also extends to consultations with third parties whose . . . advice [is] necessary to the legal representation." Ibid. But the privilege is "waived when a confidential communication between attorney and client is revealed to a third party," unless the third-party disclosure is "necessary to advance the representation." Id. at 186.

The common-interest privilege "protects communications made to a non-party who shares the client's interests." In re State Comm'n of Investigation, 226 N.J. Super. 461, 466 (App. Div. 1988). As our Supreme Court has explained:

> [T]he common-interest privilege somewhat relaxes the requirement of confidentiality . . . by defining a widened circle of persons to whom clients may disclose privileged communications. . . . [Privileged] communications of several commonly interested clients remain confidential against the rest of the world, no matter how many clients are involved. However, the known presence of a stranger negates the privilege for communications made in the stranger's presence.
>
> [O'Boyle, 218 N.J. at 187 (second alteration in original) (quoting Restatement (Third) of the L. Governing Laws. § 76(1) cmt. c (Am. L. Inst. 2000)).]

Thus, the common-interest privilege applies where disclosure is made for the purpose of advancing a common interest and doing so "in a manner not

inconsistent with maintaining confidentiality." See LaPorta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001).

Codified in Rule 4:10-2(c), the work-product doctrine recognizes the need for lawyers to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." O'Boyle, 218 N.J. at 189 (quoting Hickman v. Taylor, 329 U.S. 495, 510 (1947)). The rule provides, however, a party may obtain discovery of material prepared in anticipation of litigation by another party's attorney or consultant (i.e., work product) "upon a showing that the party seeking discovery has substantial need of the materials . . . and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." R. 4:10-2(c).

Disclosure of an attorney's work product to a third party waives the protection, unless such disclosure is confidential, such as pursuant to the common-interest privilege. See O'Boyle, 218 N.J. at 189-90. If the material is disclosed in a manner that is inconsistent with keeping it from an adversary, the work-product doctrine is waived. See id. at 192. The inquiry focuses on whether the disclosure to a third party reached an adversary or "made it substantially likely that the protected material would reach an adversary." Ibid.

III.

11

In the present matter, the crux of defendants' contentions is that the Commission and OU were jointly represented by the Debevoise Firm and, as such, the Internal Report was protected from disclosure under both the attorney-client privilege and the work-product doctrine. They therefore challenge the court's alternate finding that even if the Internal Report were protected under the attorney-client privilege, because the Debevoise Firm was hired by the Commission, "the privilege belonged to the Commission, not to the OU."

Defendants further claim the motion court disregarded the "unrebutted" certifications of Joel and Yannett, which establish the Commission retained the Debevoise Firm not only to render legal advice to the Commission, but also to the OU. Defendants emphasize, the Debevoise Firm was hired "to assess and advise on the OU's legal position and potential legal liability to third persons related to the matter, to assist in the conduct of the investigation, and to prepare a confidential report of its findings, conclusions and recommendations (i.e., the Internal Report)." Similarly, regarding the application of the work-product doctrine, defendants argue "the Commission retained the Debevoise Firm to provide legal advice to it and the OU."

For the first time on appeal, defendants acknowledge the court should have conducted an in camera review of the Internal Report. At oral argument

12

before us, however, defendants claimed before conducting an in camera review, the court was required to conduct a plenary hearing to assess the credibility of Joel and Yannett. It does not appear from the court's decision that it considered the certification of Joel and Yannett.

Plaintiffs urge us to affirm. They assert the OU lacks standing to assert the attorney-client privilege because the Commission retained the Debevoise Firm to assist its investigation and the Commission – not the OU – was not involved in creating the Internal Report. Plaintiffs maintain "the plain language of the Public Summary of the Report" refutes the Joel and Yannett certifications. For the first time on appeal, plaintiffs cite a July 20, 2022 email, apparently from Joel on behalf of the Commission stating: "We are the client, not the OU. Debevoise is conducting the daily transactions of the [recipient's] inquiry, working closely with the [C]ommission." Plaintiffs further contend that even if the Internal Report were protected, dissemination of the Public Summary waived the privilege.

Having considered defendants' contentions in view of the governing law, we vacate the order and remand for further proceedings. As a threshold matter, we disagree with defendants' argument that the motion court must first address the credibility of the Joel and Yannett certifications before considering whether

13

to conduct an in camera review. In our view, the court's initial instincts were correct; a review of the Internal Report was necessary for the court to decide the privilege issues. As we have long recognized, "[t]here is abundant authority for the proposition that in camera review of claimed confidential material is an approved and essential step when a privilege is invoked." Corsie v. Campanalonga, 317 N.J. Super. 177, 184 (App. Div. 1998) (citations omitted), rev'd in part on other grounds, 160 N.J. 473 (1999). On remand, therefore, defendants shall file the Internal Report with its exhibits, under seal, for the court's in camera review.

However, an in camera review of the Internal Report does not end the court's tasks. Because it does not appear that the court considered the Joel and Yannett certifications, after reviewing the report in camera, the court shall conduct a plenary hearing to render findings concerning the relationship between the OU and the Commission in view of the assertions made in both certifications that the entities shared a common interest. A court need not accept a certification but may not reject a sworn statement without "an evidentiary record that would allow it to make . . . a factual or credibility finding." Paladino v. Auletto Enters., Inc., 459 N.J. Super. 365, 375 (App. Div. 2019).

A-1625-23

To assist in making its findings, the court, in its discretion, may permit the parties to expand the record to include documents provided on appeal that were not provided to the court in the first instance. Indeed, because the July 20, 2022 email was not provided to the trial court, it is inappropriate for our review. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing material that is not presented to the trial court for consideration is inappropriate for consideration on appeal).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15